UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| STEPHEN THALER, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|    vs. | )   Civil Action No. 1:20cv903 |
| | ) |
| ANDREW HIRSHFELD, | ) |
|    Performing the Functions and | ) |
|    Duties of the Under Secretary of | ) |
|    Commerce for Intellectual Property | ) |
|    and Director of the United States | ) |
|    Patent and Trademark Office,[1] | ) |
|    *et al.*, | ) |
| | ) |
|    Defendants. | ) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

[1] Pursuant to 35 U.S.C. § 3, the powers and duties of the U.S. Patent and Trademark Office are vested in an Under Secretary of Commerce for Intellectual Property and Director of the U.S. Patent and Trademark Office. Effective January 20, 2021, Andrei Iancu resigned as Under Secretary of Commerce for Intellectual Property and Director of the U.S. Patent and Trademark Office, and Andrew Hirshfeld began performing the functions and duties of the Under Secretary of Commerce for Intellectual Property and Director of the USPTO. Accordingly, the named defendant for the subject civil action has changed. *See* FED. R. CIV. P. 25(d)(1).

# ARGUMENT

I. **THE PLAIN LANGUAGE OF THE STATUTORY TERM "INDIVIDUAL" IS A "NATURAL PERSON"**

As the USPTO explained in its opening memorandum, the touchstone of statutory construction analysis is the plain meaning of the terms that Congress actually promulgated; indeed, the "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Def. Mem.* (Dkt. No. 24), at 13 (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004)). And at the outset, although plaintiff does not dispute this fundamental principle of statutory construction, his opposition memorandum is devoid of a *single citation* to the language of the Patent Act – let alone the particular Patent Act provisions through which Congress not only defined "inventor" as an "individual," but also identified the "inventor" through personal pronouns. *See* 35 U.S.C. § 100(f) ("The term 'inventor' means the *individual*, or, if a joint invention, the *individuals* collectively who invented or discovered the subject matter of the invention." (emphasis added)); *see also id.* § 115(b)(2) (requiring "an oath or declaration by the original inventor" to the effect that he or she "believes *himself or herself* to be the original inventor or an original joint inventor of [the] claimed invention" (emphasis added)). That gap in plaintiff's papers reveals that his desired interpretative position is completely unmoored from the actual language that Congress used, and because that runs afoul of centuries of well-settled authority, it should be sufficient alone to require rejection of plaintiff's position.

But more importantly, the USPTO did not rest merely on the bald fact that Congress defined an "inventor" to be an "individual." The USPTO's opening memorandum instead explained that the Supreme Court had similarly held – after engaging in the same statutory construction exercise that confronts this Court here – that the plain language meaning of the statutory term "individual" is "human being" (or "natural person"). *Def. Mem.*, at 14-16 (quoting

*Mohamad v. Palestinian Auth.,* 566 U.S. 449, 453-61 (2012)). In coming to this conclusion, the *Mohamad* Court looked at the following textual guideposts: (1) the ordinary dictionary meaning of "individual"; (2) the way in which English speakers use "individual" in typical, everyday parlance; (3) the Dictionary Act's treatment of "individual"; and (4) other contextual clues within the particular statute at issue. *See Mohamad*, 566 U.S. at 454-55. And the USPTO applied each of these same guideposts to the Patent Act's use of "individual" to define "inventor." *Def. Mem.*, at 15-16.

Plaintiff has no real response to this reasoning, and does not attempt to provide an alternative application of *Mohamad*'s textual guideposts to the Patent Act so as to derive a plain meaning for the term "individual" that includes machines. Instead, plaintiff's sole argument is that *Mohamed*'s analysis is simply inapplicable here because it was adopted in a different statutory context from the Patent Act – the Torture Victim Protection Act ("TVPA") – and that the *Mohamad* Court noted that Congress does not *always* equate "individual" with "natural person." *Pl. Opp.* (Dkt. No. 28), at 10-11.

This position is meritless. *Mohamad*'s reference to "context" is not concerned with the *subject-matter* of the statute at issue; indeed, three of the guideposts that *Mohamed* identified in determining the plain meaning of "individual" have nothing whatsoever to do with the particular subject-matter of the TVPA (*i.e.*, ordinary dictionary definition; typical parlance; Dictionary Act).[2] And even if plaintiff were correct in this regard, the Federal Circuit has held that – for

---

[2]This is the very gravamen of the Ninth Circuit's decision in *Animal Legal Defense Fund v. Dep't of Agriculture*, 933 F.3d 1088 (9th Cir. 2019):

> The [*Mohamad*] Court defined "individual" to mean "natural person" as opposed to an organization. Although *Mohamad* addressed a different statutory context, we find much of its reasoning applicable here.

*Id.* at 1093.

purposes of the precise statutory context at issue here, the Patent Act – Congress's use of the term "individual" means that only a "natural person" can be an "inventor." *See Univ. of Utah v. Max-Planck-Gesellschaft,* 734 F.3d 1315, 1323 (Fed. Cir. 2013).

*Mohamad*'s fourth guidepost concerns the "context" in which Congress used the term "individual" within the particular statute being examined:

> Congress remains free, as always, to give the word a broader or different meaning. But before we will assume it has done so, there must be *some* indication Congress intended such a result. . . .
>
> There are no such indications in the TVPA. As noted, the Act does not define "individual," much less do so in a manner that extends the term beyond its ordinary usage. And the statutory context strengthens – not undermines – the conclusion that Congress intended to create a cause of action against natural persons alone.

*Mohamad*, 566 U.S. at 455 (emphasis in original); *see id.* at 456 (canvassing the remaining text of the TVPA to determine whether there was any indication that Congress intended a different meaning of "individual"). And here, plaintiff points to nothing within the text of the Patent Act *at all*, let alone statutory language within the Patent Act upon which this Court could conclude that Congress intended to deviate from the typical use of "individual" as a "human being." *Def. Mem.* at 10-13.[3] There is a good reason for this; as the USPTO explained in its opening memorandum, *id.* at 15-16, by using personal pronouns (*i.e.*, "himself or herself," 35 U.S.C. § 115(b)(2)) to describe the type of "individual" who can be an "inventor," the Patent Act is an even *stronger* case than *Mohamad* for equating "individual" with "human being."

As such, because the plain meaning of the express terms that Congress used to define "inventor" is a "human being," this Court's "interpretive task is at an end" and the statute "must

---

[3] In the introduction of his opposition memorandum, plaintiff states that the USPTO does "not address instances in which essentially the same language, in the very same legislation, is used to refer to non-natural persons." *Pl. Opp.*, at 1. Despite this cryptic sentence, nowhere within the remainder of that opposition memorandum does plaintiff identify any other use of the term "inventor" or "individual" within the Patent Act "to refer to non-natural persons."

[] be applied in accordance with its plain meaning." *Chris v. Tenet*, 57 F. Supp. 2d 330, 334 (E.D. Va. 1999).

II. **PLAINTIFF'S PREFERRED POLICY OUTCOME DOES NOT CONSTITUTE AN "ABSURD RESULT"**

Ignoring the significant Supreme Court and Federal Circuit authority that the USPTO identified for the proposition that general policy arguments are irrelevant to statutory construction, *Def. Mem.*, at 20-21, plaintiff simply repeats his position that this Court should ignore the plain meaning of the terms Congress actually used to define an "inventor."  This is so, plaintiff offers, because interpreting "individual" to connote a "natural person" would be "contrary to the spirit, purpose, and intent of Congress and the Founders, and it will result in negative, or indeed, absurd and disastrous results," *Pl. Opp.*, at 11-13.  But plaintiff cites neither any jurisprudential authority to support the use of generalized policy arguments in statutory construction nor any evidence of congressional intent on the particular question raised here (*i.e.*, whether a machine should be able to be the "inventor" on a patent application).  *Id.*  Instead, once again, plaintiff simply articulates his own subjective view that the plain meaning of "individual" "will discourage the use and development of inventive AI that has the potential to make tremendous social contributions."  *Id.* at 12.

*First*, as the USPTO previously explained, subjective arguments about the generalized policy impacts that Congress sought to inculcate through particular legislation – such as those that plaintiff articulates here – are simply insufficient to depart from the plain meaning of the statutory text.  *Def. Mem.*, at 20-21 (quoting *Fisons plc v. Quigg*, 876 F.2d 99, 101 (Fed. Cir. 1989)).[4]  Far to the contrary, as the Supreme Court recognized over ninety years ago, "there must

---

[4] As an aside, plaintiff maintains that the USPTO has "failed to engage with the outcome of their interpretation" of the term "individual" in the Patent Act.  *Pl. Opp.*, at 1.  Leaving aside the significant authority cited in the USPTO's opening memorandum to the effect that such

be something to make plain [Congress's intent] that the letter of the statute is not to prevail." *Crooks v. Harrelson*, 282 U.S. 55, 59-60 (1930); *see also Maryland State Dep't of Ed. v. Dep't of Veterans Affairs*, 98 F.3d 165, 169 (4th Cir. 1996) (holding that "to come within the ambit of this exception … the contrary intent must have been clearly expressed by the legislative body").[5] Applied to the particular statutory construction issue here, in order to avoid the plain meaning of the statutory term "individual," there "must be something" that unequivocally demonstrates that Congress did not intend to limit "inventors" to "natural people." And plaintiff concedes that he cannot meet this standard:

> Congress did not anticipate or legislate for this specific circumstance, either at the time the Patent Act was enacted, or during subsequent amendments.

*Pl. Opp.*, at 12. Because there is simply no indication – let alone a *clear* indication – that Congress intended for the term "individual" to be construed apart from its plain meaning with respect to who can be an "inventor" under the Patent Act, this Court must employ that plain meaning and reject plaintiff's position here.

*Second*, to the extent that plaintiff now wishes to avail himself of the so-called "absurd results" doctrine, *Pl. Opp.*, at 11, decades of well-settled authority provide that a litigant cannot simply remove the term "absurd" from the title of the doctrine. Generally speaking, as academic

---

policy debates have no place in statutory construction (and thus need not be addressed in litigative motion papers), *Def. Mem.*, at 20-21 (quoting *Fisons*, 876 F.2d at 101), the USPTO *has* "engaged" – in an appropriate policy making context, not in an Article III court – with the difficult issues associated with the connection between intellectual property rights and artificial intelligence, *id.* at 21 n.10. Plaintiff ignores these open forum debates, and the significant report that the USPTO issued in the wake of those debates, possibly because a wide variety of commenters did not universally share his policy position on the impact that authorizing artificial intelligence machines to be "inventors" would have on innovation.

[5] Accordingly, plaintiff's reflexive position that it is the USPTO that must "provide . . . evidence that Congress intended to prohibit patents on AI-generated Inventions," *Pl. Opp.*, at 12, has the burden exactly backwards.

commenters have noted, "the absurd results doctrine should be used sparingly because judicial speculation that the legislature could not have meant what it unmistakably said risks corrupting the separation of powers doctrine." 2A SUTHERLAND STATUTORY CONSTRUCTION, § 46:7, at 257-58.  And courts have fully embraced this view, recognizing that it is truly the rare scenario in which an Article III court can supplant the plain meaning of a statutory term because it would lead to an "absurd result":

> In most cases, the plain meaning of a provision not contradicted by any other provision in the same instrument is not to be disregarded because we believe the framers of the instrument could not intend what they say.  It must be one in which the absurdity and injustice of applying the provision to the case would be so monstrous that all mankind would without hesitation unite in rejecting the application.

*Payne v. Fed. Land Bank*, 916 F.2d 179, 182 (4th Cir. 1990) (quoting *Sturges v. Crowninshield*, 17 U.S. (4 Wheat.) 122, 202-03 (1819)); *see also Tiscareno-Garcia v. Holder*, 780 F.3d 205, 208 (4th Cir. 2015) ("[I]n 'exceptionally rare' instances where 'a literal reading of a statute . . . results in an outcome that can truly be characterized as absurd, *i.e.*, that is so gross as to shock the general moral or common sense,' we can look past the statute's plain and ordinary meaning." (quoting *Sigmon Coal Co. v. Apfel*, 226 F.3d 291, 304 (4th Cir. 2000), *aff'd sub nom. Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 442 (2002))).  Plaintiff's position on the impact that inventions allegedly conceived entirely by artificial intelligence would have on innovation falls far short of the type of "monstrous" result that "shocks the general moral or common sense," and thus could possibly authorize a departure from the plain meaning of the term "individual."[6]

---

[6] Plaintiff also suggests disagreement with the USPTO's position that the so-called Patent Clause of the Constitution, *see* U.S. CONST., Art. I, § 8, cl. 8, only provides Congress with *authority* to legislate, it does not *mandate* that Congress actually promulgate legislation consistent with plaintiff's view of what would spur innovation.  *Pl. Opp.*, at 8-9.  But that has been the nature of Congress's legislative powers under Article I since the dawn of the republic; as Chief Judge Marshall wrote, Article I "must allow to the national legislature that *discretion* with respect to the means by which the powers it confers are to be carried into execution," and provide that national legislature with the ability to exercise "its best judgment in the selection of

\* \* \*

In the end, the *entirety* of plaintiff's interpretative position here is premised on a single policy notion – that allowing artificial intelligence machines to serve as the "inventor" on a patent application will promote innovation. Even were that true – and plaintiff offers nothing than his own subjective view on that subject – the authorities cited above and in the USPTO's opening memorandum provide that these types of policy arguments cannot supplant the plain meaning of the actual words that Congress passed and the President of the United States signed into law.

Perhaps more pointedly, however, the Supreme Court recently warned against the use of policy arguments about the impact that a particular interpretation of the Patent Act would have on innovation. In *Kimble v. Marvel Entm't, LLC*, 576 U.S. 446 (2015), in confronting a question about patent licensing, the Supreme Court – speaking through Justice Kagan – explained that one litigant "also [sought] support" for his position "from the wellspring of all patent policy: the goal of promoting innovation." *Id.* at 463. After explaining that the policy debate was nowhere near as one-sided as the litigant suggested, the Court provided as follows:

---

measures to carry into execution the constitutional powers of the government." *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 420-21 (1819) (emphasis added). The Supreme Court, in more modern times, has held similarly with respect to the Patent Clause (here, with respect to copyright):

> At anytime Congress determines that a particular category of "writing" is worthy of national protection and the incidental expenses of federal administration, federal copyright protection may be authorized. Where the need for free and unrestricted distribution of a writing is thought to be required by the national interest . . . the Copyright Clause and the Commerce Clause would allow Congress to eschew all protection.

*Goldstein v. California*, 412 U.S. 546, 559 (1973); *see also Graham v. John Deere Co.*, 383 U.S. 1, 5 (1966) ("The clause is both a grant of power and a limitation. This qualified authority, unlike the power often exercised in the sixteenth and seventeenth centuries by the English Crown, is limited to the promotion of advances in the 'useful arts.'").

> Which is one good reason why that is not our job. Claims that a statutory precedent has "serious and harmful consequences" for innovation are (to repeat this opinion's refrain) "more appropriately addressed to Congress." That branch, far more than this one, has the capacity to assess Kimble's charge that *Brulotte* [v. *Thys Co.*, 379 U.S. 29 (1964)] suppresses technological progress. And if it concludes that *Brulotte* works such harm, Congress has the prerogative to determine the exact right response – choosing the policy fix, among many conceivable ones, that will optimally serve the public interest.

*Id.* at 464-65 (quoting *Halliburton, Inc. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 277 (2014)).

And so it is here. If Congress determines that the "inventor" of subject-matter on which patent protection is sought can be an artificial intelligence machine, it "has the prerogative to determine the exact right response" – including the identification of the precise circumstances under which an artificial intelligence machine can be an "inventor."[7] That is simply not the role of the canons of statutory construction and the Article III litigative process.

///

///

---

[7] Plaintiff devotes nearly a quarter of his reply memorandum to an explanation of how other countries (and national consortiums) have addressed the particular policy issue raised here. *Pl. Opp.*, at 4-7. As plaintiff openly concedes, these other nation's efforts have no bearing on the construction of the Patent Act provisions at issue in this civil action. *Id.* at 5 ("Ultimately, whether patents are granted for the application in the United Kingdom is dependent on the language of The Patents Act 1977, and principles of statutory interpretation in the United Kingdom which differ from those of the United States."). But there is one aspect of plaintiff's discussion that it worth noting in this regard; namely, that the European Parliament has promulgated *legislation* on this issue, *id.* at 7, demonstrating that legislative bodies are the proper forum for plaintiff's policy arguments.

## **CONCLUSION**

For the foregoing reasons, and those articulated in the USPTO's opening memorandum, this Court should enter summary judgment in favor of the USPTO, and deny plaintiff's motion for identical relief.

                                              Respectfully submitted,

                                              RAJ PAREKH
                                              ACTING UNITED STATES ATTORNEY

By:         /s/_____
        DENNIS C. BARGHAAN, JR.
        Deputy Chief, Civil Division
        Assistant U.S. Attorney
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        Telephone: (703) 299-3891
        Fax:      (703) 299-3983
        Email: dennis.barghaan@usdoj.gov

DATE: March 24, 2021                    ATTORNEYS FOR DEFENDANTS

OF COUNSEL:     Meredith Schoenfeld
                       Peter Sawert
                       Associate Solicitors
                       United States Patent & Trademark Office

## CERTIFICATE OF SERVICE

      I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will transmit a Notice of Electronic Filing ("NEF") to the following:

Geoffrey Alex Neri<br>
Brown Neri Smith & Khan LLP<br>
11766 Wilshire Boulevard, Suite 1670<br>
Los Angeles, California  90025<br>
geoff@bnsklaw.com

Date: March 24, 2021                              _____/s/_____  
                                                       DENNIS C. BARGHAAN, JR.  
                                                       Deputy Chief, Civil Division  
                                                       Assistant U.S. Attorney  
                                                       2100 Jamieson Avenue  
                                                       Alexandria, Virginia 22314  
                                                       Telephone: (703) 299-3891  
                                                       Fax:         (703) 299-3983  
                                                       Email:  dennis.barghaan@usdoj.gov  

                                                       ATTORNEYS FOR DEFENDANTS